FILED
2010 Apr-12  AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JONNA LEDBETTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-1065-E |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Jonna Ledbetter, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;
   (2)   whether she has a severe impairment;
   (3)   whether her impairment meets or equals one listed by the Secretary;
   (4)   whether the claimant can perform her past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

  In the instant case, ALJ Robert G. Faircloth determined the plaintiff met the first two tests, but concluded that while the plaintiff's impairments of "major depression, recurrent, moderate and a panic disorder without agoraphobia, mild" are "severe," they did not meet or medically equal a listed impairment.  [R. 18].  The ALJ found that the plaintiff retains the residual functional capacity to perform unskilled light work requiring less than frequent contact with others. [R. 20].  Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

  It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions

about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by

substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401.
The court noted that "[a]mong the most persuasive arguments supporting the rule is the
need to expedite disability claims." Id. If the VE is asked whether the claimant could
perform other jobs if his testimony of pain or other subjective symptoms is accepted as
true, the case might be in a posture that would avoid the necessity of a remand. As
Varney recognized, if the VE testifies the claimant can perform no jobs if his pain
testimony is accepted as true, the only relevant issue would be whether that testimony was
properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 42 years old at the time of the ALJ decision. ALJ Robert G. Faircloth found the following severe impairments: major depression, recurrent, moderate and a panic disorder without agoraphobia, mild. [R. 18]. Based on these severe medical impairments, the ALJ assessed the plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently and sit, stand, and walk 6 hours in an 8-hour workday as defined in 20 CFR 404.1567(b) and 416.967(b). However, due to the claimant's depressive symptoms, she would be limited to unskilled work activity requiring less than frequent contact with others.

[R. 20].

Robert A. Storjohann, Ph.D., a licensed psychologist, performed a consultative psychological examination at the behest of the Commissioner on April 23, 2007. [R. 157-160]. Dr. Storjohann conducted a comprehensive psychological

evaluation, including mental status examination and interview, and concluded with the diagnosis that plaintiff suffers from: (1) major depression, recurrent, severe, without psychotic features, chronic; (2) generalized anxiety disorder; (3) panic disorder with agoraphobia; (4) social phobia, generalized; (5) amphetamine abuse, sustained full remission (by patient report); (6) cannabis abuse, sustained full remission (by patient report); and (7) dependent personality disorder.  [R. 160].  Dr. Storjohann assessed the plaintiff's current GAF at 42,[1] with 42 being the highest level in the past year.  Dr. Storjohann continued:

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV").  A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 32.  Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below.  The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability.  See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work.").  But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

> The prognosis for significant improvement during the coming 6 to 12 months is considered to be extremely poor given the chronicity and severity of her psychiatric difficulties. Based upon the results of this evaluations, Mrs. Ledbetter appears to have moderate deficits in her ability to understand, carry out and remember instructions in a work setting. She appears to have marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting.

[R. 160]. As for her motivation and cooperation, the plaintiff "was cooperative with the evaluation process. She appeared to make her best effort to answer all questions accurately and to the best of her ability." [Id.].

Although the ALJ gave "significant weight" to the opinion of Dr. Storjohann, he chose to give "great weight" to the state agency reviewing psychiatrist, Frank J. Nuckols, M.D. [R. 22]. Dr. Nuckols concluded that the plaintiff was only moderately limited in her ability to: (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods of time; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; and (7) respond appropriately to changes in the work setting. [R. 132-133].

Dr. Nuckols's non-examining review was completed on April 20, 2007, three days before the plaintiff was comprehensively evaluated by Dr. Storjohann. As such, Dr. Nuckols did not have the benefit of Dr. Storjohann's report in making his assessment. The present case bears a resemblance to the situation in Wilder v. Chater, 64

F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private*

> *or personal capacity*;  however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Faircloth has abused his discretion by substituting his own medical judgments for those of the Commissioner's own consulting psychologist, Dr. Storjohann.  While rejecting this opinion, the ALJ recites the evaluation by a non-examining medical consultant to find the plaintiff has the residual functional capacity to perform a reduced range of light work.  This reliance is improper in this Circuit:

> The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. <u>Spencer on Behalf of Spencer v. Heckler</u>, 765 F.2d 1090 (11th Cir.1985); <u>Strickland v. Harris</u>, 615 F.2d 1103 (5th  Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. <u>Johns v. Bowen</u>, 821 F.2d 551 (11th  Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those

9

of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

Lamb v. Bowen 847 F.2d 698, 703 (11th Cir. 1988). In this case, as in Lamb, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." Id.

At the hearing, the VE testified that given the ALJ's stated residual functional capacity for the plaintiff, she could perform the requirements of several unskilled sedentary[2] jobs, such as document preparer, stuffer, and wire wrapper. [R. 228]. The ALJ's examination of the VE continued:

> Q: All right. I refer you to Exhibit 4F, Dr. Storjohann.
>
> A: Yes, sir.
>
> Q: And I ask you to consider page 4 wherein he has indicated that Ms. Ledbetter has diagnoses, diagnosis of major depression, recurrent severe and chronic, it is chronic. Recurrent and chronic so it would be like saying it twice, but anyway, she also has a diagnosis of panic disorder with agoraphobia which is social, social things.
>
> A: Yes, sir.
>
> Q: She has a history of amphetamine abuse and cannabis which is marijuana abuse, but that's historical. He hasn't said anything other than it's in her past.
>
> A: Yes, sir.

---

[2] While the ALJ found an RFC of less than a full range of light work, the VE testified that given the limitations of that RFC, the examples of jobs he cited were in the sedentary range.

Q: And major depression severe and recurrent. If that is stated in terms of function, would preclude a person from work, you've indicated as much.

A: Yes, sir.

Q: Now, you've indicated marked or extreme.

A: Yes, sir.

Q: And Dr. Storjohann has said severe. Now, he is talking, he's speaking from a medical standpoint and it, is the marked, is that, is that a term that is used vocationally?

A: Or psychologically, yes, sir.

Q: Or psychologically, okay. All right. But if it is severe, person can't work with it?

A: That's correct.

Q: Dr. Storjohann has indicated a GAF which is a global assessment [of] functioning.

A: Yes, sir.

Q: Are you familiar with GAF?

A: I am, Your Honor.

Q: And does it have a bearing upon an indication of whether a person can work or not?

A: It does. The general cutoff is 50 and the global assessment [of] functioning looks at a more holistic approach to one's being, if you will. It looks at one's economic status, social status, employment status, as well as –

Q: Financial, financial –

A: Financial, psychological and so forth.

11

Q: They [sic] way they get along at home and everything about them it takes into account.

A: Yes, sir.

Q: But it does indicate when that functioning is below 50, as you've indicated there, it, it presents a situation where they can't function at a work situation?

A: That's correct, Your Honor.

Q: All right. And 42 would be within the marked area?

A: Yes, sir.

Q: Okay. And would be bordering, I guess, close to the extreme, but it's at least in the marked?

A: Yes, sir.

Q: And you've indicated a marked impairment upon the ability to function would preclude work?

A: Yes, sir.

[R. 230-232].

      The court concludes that substantial evidence does not support the ALJ's decision to give great weight to the opinions of the State agency non-examining consultants over the opinion of the Commissioner's consulting psychologist. Dr. Storjohann's opinion was that the plaintiff has marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. [R. 160]. The testimony of the VE was that given the plaintiff's assessed GAF of 42, the plaintiff

has a marked impairment upon her ability to function in a work situation and that would preclude all work. [R. 232].

## CONCLUSION

Therefore, the Commissioner failed to carry her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 12 April 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.